UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20262-CR-SINGHAL

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HASAN HAKIM BROWN,

    Defendant.
_____/

GOVERNMENT'S OBJECTION TO THE DEFENDANT'S
MOTION FOR A VARIANCE

The United States, by and through undersigned counsel, hereby files its Response to the Defendant's Sentencing Memorandum and Request for Variance (the "Motion"). The defendant requests a variance from his advisory guidelines range of 97-121 months' imprisonment, to 37 months' imprisonment (DE: 86). The United States respectfully submits that the defendant be sentenced within the applicable advisory guidelines. As described in greater detail below, this defendant managed a conspiracy that conducted two separate, but intertwined fraud schemes, resulting in a combined loss of over $24 million dollars. Based on the individual loss amount for each scheme, combined with the agreed upon enhancements (DE:61), the United States submits that alone, each scheme the defendant participated in scores to an advisory guidelines range of over 37 months. Taken another way, this defendant's request is essentially asking this Court to completely disregard and excuse his conduct as it relates to one of the two complex fraud schemes.

The defendant argues that he should receive a 3-year sentence for managing a group of individuals who conducted two sophisticated schemes to defraud multiple banks of over

$24 million dollars. The defendant bases his argument on (1) his early acceptance of responsibility, (2) substantial cooperation, (3) sentences levied in far less sophisticated PPP fraud schemes, (4) the defendant's remarkable family, and (5) the reality of incarceration in the time of COVID-19.

First, the defendant received points for his early acceptance of responsibility (PSI ¶ 87). Second, any substantial cooperation will be addressed in either a Section 5K1.1 or Rule 35 motion (DE: ¶¶8-10). Third, the defendant here committed two distinct fraud schemes as part of his conspiracy. None of the cases the defendant sites address a defendant who participated in more than one fraud scheme. Furthermore, as described below, a similarly sophisticated PPP fraud scheme defendant received a sentence of over eleven (11) years' incarceration. Fourth, the defendant's supportive family, combined with his education and intelligence suggest that he, unlike so many defendants that end up in the federal system, had choices. He chose to participate in fraud. Finally, it is ironic that the defendant is relying on the very pandemic he exploited for millions of dollars to now ask for a reduced prison sentence. The United States government created the PPP program to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. This defendant committed much of this crime during the COVID-19 pandemic. The consequences of committing a multimillion-dollar fraud during the pandemic, including incarceration, were foreseeable. None of the reasons noted in the Motion warrant a variance.

### Factual Background and United States Sentencing Guidelines

The parties agree that the United States Probation Department's factual findings and application of the United States Sentencing Guidelines ("USSG") in its Presentence

Investigation Report ("PSIR") are correct, save the single objection noted in the defendant's Motion.[1]

## Case Background

On or about August 28, 2020, the defendant was arrested on a criminal complaint charging him with conspiracy to commit bank fraud. On or about May 3, 2021, he waived indictment and was arraigned on an information charging him with the same. On June 29, 2021, the defendant pled guilty to the one-count Information. On or about September 13, 2021, the United States Probation Department released a revised PSIR. Based on a number of agreed upon enhancements, the defendant's advisory sentencing guideline range is 97-121 months.

## Application of 18 U.S.C. § 3553(a) to the defendant

Pursuant to 18 U.S.C. § 3553(a), the court, in determining a particular sentence to be imposed, shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. These factors are discussed below.

**A. The nature and circumstances of the offense and the history and characteristics of the defendant**

---

[1] The United States and the Defendant agreed to a two-level enhancement pursuant to U.S.S.G. § 3B1.1.

3

### Part 1 of the Offense: Synthetic Identities

As outlined in the Information (DE:47) and the defendant's factual proffer (DE: 62), the defendant managed co-conspirators in two sophisticated fraud schemes that bilked numerous banks out of millions of dollars.

The scheme started as a Synthetic Identity Scheme ("SID")[2] in which the defendant and his co-conspirators created hundreds of SIDs to open false and fraudulent bank accounts and credit accounts at a Victim Bank located in Texas.

As outlined in the Defendant's proffer, he used virtual machines to run and manage his co-conspirators and the SID fraud scheme. In addition to using sophisticated technology and SIDs to advance this scheme, the defendant utilized co-conspirators like Johnny Philus (21-cr-20067 S.D. Fla., Defendant's Motion, p. 6-8) to help redirect mail from the Victim Bank to members of the conspiracy. In total, the defendant and his co-conspirators received approximately $1million from the Victim Bank in Texas.

If the Defendant stopped his criminal conduct here, the sentence requested in the Defendant's Motion might constitute a reasonable request. The advisory guidelines range for his conduct in the $1 million dollar Texas Victim Bank scheme appear to score as follows (*See* PSIR ¶¶ 78-89, 142):

| | |
|---|---|
| Base offense: | 7 |
| Loss: | 14 (more than $550,000) |
| Role: | 2 |
| Sophisticated Means: | 2 |

---

2  SIDs are sometimes referred to as "Credit Protection Numbers" or CPNS.

| | |
|---|---|
| Use of Access Device: | 2 |
| Adjusted Level: | 27 |
| Acceptance: | 24 |
| Range: | 51-63 without acceptance or 37-46 with acceptance. |

However, the defendant did not stop here. Instead, he used the infrastructure he created to defraud the Victim Bank in Texas to file fraudulent PPP and EIDL loans, causing over $24 million in fraudulent loan payments.

Part Two of the Scheme: PPP and EIDL Fraud

As outlined in the Information (DE:47) and the defendant's factual proffer (DE: 62) the defendant applied for a false and fraudulent PPP loan for his fraudulent company, which resulted in a $544,650 loan disbursement to the defendant's company. He did not stop there. He also filed numerous additional false and fraudulent PPP loans for his co-conspirators for a fee. But still, it would seem, the Defendant wanted more.

The Defendant took one extra step. A step that none of the defendants noted in the defendant's Motion (DE:86, P.12 of 13, "C. Similar Cases") took, and a step that separates this PPP case from other PPP cases throughout the nation. The defendant and his co-conspirators took previously established SIDs, opened shell companies in their names, and fraudulently applied for PPP loan relief in those names, racking in even more fraud funds.

The nature and circumstances in this case do not warrant a variance. To vary down to the sentence the defendant requests is to discount his role as the manager of this truly egregious and sophisticated PPP fraud scheme.

*Defendant's Reliance on Similar Cases is Misplaced*

5

The defendant notes several cases in his Motion in which defendants received sentences between around two to ten years. None of those cases involve two complex fraud schemes, none of the cases have a loss amount near $24 million dollars, and none of those cases involve defendants who created false and fictitious people and companies in order to steal from the government.

The case most similar to the instant case appears to be *United States v. Dinesh Sah* (20-cr-484 N.D. Tx.). Sah submitted 15 fraudulent PPP applications, filed under the names of various purported businesses that he owned or controlled, to eight different lenders seeking approximately $24.8 million in PPP loans. Sah claimed that these businesses had numerous employees and hundreds of thousands of dollars in payroll expenses when, in fact, no business had employees or paid wages consistent with the amounts claimed in the PPP applications. Sah was sentenced to more than eleven (11) years in prison for his role in his PPP loan fraud scheme.

In *United States v. Hines*, the defendant received more than 6 years' imprisonment for obtaining over $3.9 million in PPP loans (21-cr-20011 S.D. Fla.). A significant sentence and a pale sum compared to what this defendant stole.

The cases the defendant sites are quite dissimilar from the instant case. For instance, according to the defendant's Motion, the defendant in the Andre Clark case received a 33-month sentence (DE:85 at 5, 21-cr-60029 S.D. Fla). The Defendant highlights "a notable distinction" between the instant case and Clark's case: Clark was afforded the opportunity to plead to a § 371 conspiracy which resulted in a lower base offense. However, the defendant does not point out other notable distinctions between the cases:

- The defendant in the instant case managed not one, but two separate schemes to defraud banks;
- The loss amount in the instant case accounts for a four-level difference between this defendant and Clark; and
- Clark did not have enhancements for use of PII, role, or sophisticated means.

These two cases are quite different indeed. Other distinguishable cases include *United States v. Latoya Stanley and Johnny Philus* (21-cr-20067 S.D. Fla.) (DE: 86 at 6) (defendant received a 30-month sentence for *a single* PPP loan and *a single* EIDL loan totaling $150,000); *United States v. Casey David Crowther* (20-cr-114 M.D. Fla.) (defendant sentenced to 37 months imprisonment after being convicted in a jury trial for obtaining over $2 million dollars in PPP loans that he misappropriated). The cases cited by the defendant involve less sophisticated PPP fraud, lower loss amounts, and *only* PPP fraud. None of these cases two sophisticated schemes like the instant case.

Varying down from the advisory guidelines range of 97-121 months to 37 months does not adequately address the nature and circumstances of this case, nor does it account for the seriousness of this offense. Finally, it does not promote respect for the law. A just punishment for this conduct, is a sentence within the advisory guidelines.

**B. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

PPP Loans are Small Business Association loans meant to help businesses keep their workforce employed during the COVID-19 crisis. In the months since the CARES Act passed, more than 100 defendants in more than 70 criminal cases have been charged with fraud

related to these programs.[3] Law enforcement has seized more than $60 million in cash proceeds derived from fraudulently obtained PPP funds, as well as numerous real estate properties and luxury items purchased with such proceeds. In this case alone, law enforcement has seized over $11 million dollars.

This is serious offense. A sentence within the advisory guidelines range will reflect the serious nature of this offense, provide just punishment, and hopefully deter others from stealing funds from this important government program that was created to help honest working citizens make ends meet during this pandemic.

### C. The Defendant's Family

Certainly, the United States understands the significance of the defendant's education, history, and family support. Within the criminal justice system, we are often faced with defendants who have had to struggle against almost insurmountable odds during their formative years and beyond. Often, those defendants will cite to those struggles as a reason for their missteps and misguided path towards criminality. Here, it appears that the defendant was given so many gifts… a loving family, superior intellect, and the benefit of advanced education. The defendant had the means, opportunity, and potential to succeed in any number of legitimate paths. With his background and support, one can only conclude that these fraud schemes were crafted in an intelligent, deliberate, and thoughtful manner. The sheer complexity of these schemes supports that notion. This defendant made an informed decision to manage these fraud schemes. That decision, under these circumstances, does not warrant a variance.

---

3 https://www.justice.gov/opa/pr/man-purchased-lamborghini-after-receiving-39-million-ppp-loans

### D. Serving a Sentence Under COVID Conditions

As noted above, the defendant was aware of the COVID-19 pandemic when he committed these crimes. He understood the severity of the situation. He lived through a lockdown. He saw how businesses and families were struggling. He also saw how the United States government responded to this crisis when it created the Paycheck Protection Program. The money was meant to keep businesses afloat during these uncertain times. In the midst of the pandemic, amongst the struggles of his fellow citizens, this defendant defrauded the PPP program in three different ways. First, he applied for his own, false and fraudulent PPP loan. Then, he then helped his co-conspirators apply for their own PPP loans. Finally, he used completely false and fraudulent identities to open completely false and fraudulent companies to take out additional false and fraudulent PPP loans.

This defendant took advantage of a pandemic to unjustly enrich himself, and now turns to that same pandemic as a reason for a downward variance. Large swaths of the United States were locked down, businesses were faltering, and millions of people were fighting the impacts of COVID while this defendant and his co-conspirators collected millions in stolen government funds. The consequences of committing a multimillion-dollar fraud during the pandemic, including incarceration, were foreseeable to this defendant. His regret now does not warrant a variance.

### E. Cooperation

The United States submits that the defendant's cooperation is addressed in its Motion for Downward Departure. The United States will address the nature of this cooperation at the sentencing hearing and thereafter make a motion to depart from the advisory guidelines range. The United States submits that any additional variance or departure is not warranted.

## Conclusion

The defendant managed two complex, multifaceted fraud schemes over the course of two years. He exploited this awful pandemic for personal gain. He started the conspiracy with a $1 million dollar scheme and a single victim bank. Over the course of two years, it grew and expanded in scope and sophistication, culminating in a $24 million dollar scheme involving multiple banks. He now, in essence, asks the Court to disregard one of those schemes entirely and sentence him well below the advisory guidelines range. The United States respectfully submits that the defendant should be sentenced within the advisory guidelines range and his request for a downward variance should be denied.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

/s/Brooke Watson
Brooke Watson
Assistant United States Attorney
Court No. 5501844
99 NE 4th Street
Miami, Florida 33132
305.961.9070
brooke.watson@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 20, 2021, I electronically filed and served the foregoing document with the Clerk of Court using CM/ECF.

Assistant United States Attorney
Brooke Watson